



**JKG** UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LLOYD GRAHAM, on behalf of himself and all others similarly situated, ) | Case No. **11    7103** |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | FILED |
| OLYMPUS CORPORATION, MICHAEL C. WOODFORD, TSUYOSHI KIKUKAWA, and SHUICHI TAKAYAMA, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## CLASS ACTION COMPLAINT

Plaintiff, by his attorneys, on behalf of himself and all others similarly situated, alleges the following on personal knowledge as to himself and his acts, and as to all other matters based upon his attorneys' investigation which included, among other things, a review of public filings, analysis of publicly-available news articles and reports, press releases and other matters of public record for Olympus Corporation ("Olympus" or the "Company"). Additional support for these allegations will be available upon an opportunity for discovery.

## NATURE OF THE ACTION

1.      This a class action on behalf of all purchasers of American Depository Receipts ("ADRs") of Olympus between November 7, 2006 and November 7, 2011, inclusive, (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). Olympus is a Japanese corporation that manufactures imaging systems, and other products and sells them, among other places, in the United States.

1



2.      Defendant Olympus made numerous false statements about its financial condition and income over at least the past five years. Olympus, however, intentionally hid losses and falsely represented such losses in the form of inflated fees. Olympus' ADRs trade on exchanges in the United States.

3.      In 2008, Olympus bought Gyrus Group PLC ("Gyrus"), a British medical equipment, for over $2 billion, and paid its investment adviser an unprecedented $687 million in connection with the acquisition. Olympus described the $687 million payout as a fee to Axes America for advising on the Gyrus deal. Axes America, however, ceased operations soon after the Gyrus deal closed.

4.      On November 7, 2011, the Company disclosed that money for corporate deals made from 2006 to 2008 had in fact been used to mask heavy losses on investments incurred since the 1990s. The Company stated that Olympus channeled money through several investment funds to "eliminate latent losses."

5.      Olympus stock declined sharply. On November 8, 2011, following the Company's admissions, the price of OCPNY stock closed at $9.05 from the prior day's closing price of $13.72, for a single day loss of $4.67 or over 34%. By November 10, 2011, the stock had dropped to less than $6 per share. Olympus' top management has resigned.

6.      Olympus' fraudulent conduct has caused a financial scandal in Japan. Here in the United States, Olympus is under investigation by the SEC and FBI.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331, 1337 and 1367 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

8. This action arises under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C.

§§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). Venue is

proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28

U.S.C. §1391(b) and (c). Substantial acts in furtherance of the alleged fraud and/or its effects

have occurred within this District.

9.      In connection with the acts and omissions alleged in this complaint, defendants,

directly or indirectly, used the means and instrumentalities of interstate commerce, including, but

not limited to, the mails, interstate telephone communications, and the facilities of the national

securities markets.

**PARTIES**

10.      Plaintiff purchased Olympus ADRs on a U.S. exchange during the Class Period,

as set forth in the accompanying certification which is incorporated herein by reference, and was

damaged thereby. Plaintiff resides in the United States.

11.      Defendant Olympus is a Japanese corporation based in Tokyo, Japan. The

Company was founded in 1919 and is engaged in the manufacture and sale of imaging systems.

The Company's common stock trades on the Tokyo Stock Exchange and its ADRs trade in the

U. S. under the ticker symbols OCPNY and OCPNF. The depositary and transfer agent for the

Company's ADRs is The Bank of New York Mellon, 101 Barclay Street, New York, New York

10286. The Company advertises heavily, and conducts substantial business in, the United States

which (along with Mexico and Canada) represented 21.5% of the Company's total worldwide

sales in the year ending March 31, 2011. The Company maintains a registered agent for the

service of process for most purposes in this District, namely the Chief Financial Officer of its

subsidiary, Olympus Corporation of America, located at 3500 Corporate Parkway, P.O. Box 610,

Center Valley, PA 18034. (*See* Form FX, filed with the SEC on 11/5/10). Olympus also files reports with the SEC in Washington, D.C. in connection with its issuance of stock and tender offers.

12.     Defendant Michael C. Woodford ("Woodford") served at material times during the Class Period as the Company's President, Chief Executive Officer and Chief Operating Officer.

13.     Defendant Tsuyoshi Kikukawa ("Kikukawa") served at material times during the Class Period as the Company's Chairman, President and Chief Executive Officer.

14.     Defendant Shuichi Takayama ("Takayama") served at material times during the Class Period as the Company's President and senior executive.

15.     Defendants Woodford, Kikukawa and Takayama are referred to herein as the Individual Defendants.  The Individual Defendants, as senior officers and/or directors of Olympus, are controlling persons of the Company.  Each exercised their power and influence to cause Olympus to engage in the fraudulent practices complained of herein.

## CLASS ACTION ALLEGATIONS

16.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased or otherwise acquired Olympus ADRs between November 7, 2006 and November 7, 2011, inclusive (the "Class Period"), and who were damaged thereby.  Excluded from the Class are defendants, members of the immediate family of each of the Individual Defendants or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

17.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members of the Class located throughout the United States. During the Class Period, Olympus ADRs were actively traded on the OTC under the symbol "OCPNY" and "OCPNF." Record owners and other members of the Class may be identified from records maintained by Olympus and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

18.    Plaintiff's claim is typical of the claims of the other members of the Class as all members of the Class were similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

19.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

20.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.    whether the federal securities laws were violated by defendants' acts and omissions as alleged herein;

b.    whether defendants participated in and pursued the common course of conduct complained of herein;

c.    whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, financial condition and prospects of Olympus;

d.        whether statements made by defendants to the investing public during the

Class Period misrepresented and/or omitted to disclose material facts about the business,

finances, value, performance and prospects of Olympus;

e.        whether the market price of Olympus ADRs during the Class Period was

artificially inflated due to the material misrepresentations and failures to correct the material

misrepresentations complained of herein; and,

f.        the extent to which the members of the Class have sustained damages and

the proper measure of damages.

21.        A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this suit as a

class action.

## SUBSTANTIVE ALLEGATIONS

22.        Throughout the Class Period, defendants issued statements, financial information,

annual reports and communications about the Company.  These statements included its annual

reports for the years ending 2005, 2006, 2007, 2008, 2009, 2010 and 2011.  These and other

public statements were false and misleading (and omitted material facts necessary in order to

make such statements, in light of the circumstances under which they were made, not

misleading) because, among others, they intentionally hid losses incurred by the Company and

falsely represented such losses in the form of inflated fees.

23. The Company's Annual Report for its year-ended March 31, 2005, stated that the Company lost $107 million on roughly $7.4 billion in sales. *See* Olympus Annual Report 2005 at 5 (available at the Company's website: *www.olympus-global.com*). In presenting the loss for 2005, President Kikukawa stated that:

> Although our performance in fiscal 2005 is a cause for concern to our stakeholders, including shareholders, customers, suppliers, and employees, we are driving forward restructuring with the single-minded purpose of meeting your expectations for the future.

*See* Olympus Annual Report 2005 at 9.

24. Thereafter, and throughout the Class Period, the Company reported high sales and profits. *See* Olympus Annual Report 2006 at 7 (reporting income of $250 million on $8.5 billion in sales for year-end March 31, 2006); Olympus Annual Report 2007 at 5 (reporting income of $398 million on $8.8 billion in sales for year-end March 31, 2007); Olympus Annual Report 2008 at 4 (reporting income of $552 million on $10.7 billion in sales for year-end March 31, 2008); Olympus Annual Report 2009 at 5 (reporting a loss of 1.2 billion on $10.3 billion in sales for year-end March 31, 2009); Olympus Annual Report 2010 at i (reporting income of $530 million on $9.8 billion in sales for year-end March 31, 2010); Olympus Annual Report 2011 at 36 (reporting income of $92 million on $10.6 billion in sales for year-end March 31, 2011). (*See* www.olympus-global.com). During this period, the Company also made numerous corporate acquisitions, including the purchase of Gyrus, a British medical equipment, in 2008 for over $2 billion.

25. By year-end 2011 (i.e., March 31, 2011), with Michael C. Woodford now as its President and Chief Operating Officer, the Company aimed to capitalize on its recent corporate acquisitions and making them pay off:

….we invested ¥260 billion in the acquisition of Gyrus back in 2008, so I think we need to devote our efforts to achieve organic growth at this moment and to maximize our return from that investment. The purchase of Gyrus resulted in a significant expansion of our sales network in the minimally invasive treatment field. And through the acquisition of Gyrus, we are consolidating our core foundation of "manufacturing" to improve earnings capability.

Olympus Annual Report 2011 at 11 (*see* www.olympus-global.com).

26.     On October 14, 2011, however, just two weeks after the Company named Woodford its Chief Executive Officer, the Company announced Woodford's dismissal. Woodford said he was fired because he questioned a $687 million advisory fee linked to the 2008 acquisition of Gyrus. The Company's Chairman, Tsuyoshi Kikukawa took over Woodford's duties.

27.     Olympus described the $687 million payout as a fee to Axes America for advising on the Gyrus deal. Axes America is a small broker-dealer in New York headed by two Japanese bankers, Hajime Sagawa and Akio Nakagawa. *See* Peter J. Henning, "In Olympus Inquiry, F.B.I. Has Many Possible Paths to Pursue," *The New York Times*, Oct. 31, 2011. Olympus later paid the bulk of the $687 million to a Cayman Islands company linked to Axes, a firm called Axam Investments. However, when Olympus first announced the acquisition, it said only that Perella Weinberg, an independent investment bank, advised on the deal. The Company made no mention of Axes America or Axam Investments.

28.     On October 21, 2011, Olympus stated that it would form an independent committee to investigate the past acquisitions.

29.     On October 24, 2011, Olympus stated that Woodford used his position to leak "company secrets" by questioning advisers' fees and that he aims "to ruin the credibility" of the Company.

30.   On October 26, 2011, Tsuyoshi Kikukawa resigned as Chairman and President of the Company, and Shuichi Takayama succeeded him as president.

31.   On October 27, 2011, at a news conference in Tokyo, Shuichi Takayama defended the funds paid to Axes and Axam, saying that Olympus had determined that the fee "would fully pay off." He said the advisers were hired to give wide-ranging guidance to Olympus, including identifying potential takeover targets in the medical field. "Olympus sought acquisitions as part of a strategy to find new growth areas and reduce our dependency on endoscopes," Takayama said. "These acquisitions were part of that effort." *See* Ben Protess and Hiroko Tabuchi, "U.S. Inquiry Grows Over Olympus Payout," *The New York Time,* Oct. 27, 2011. Axes America, which is based in New York City, ceased operations soon after the Gyrus deal closed, and after Axam Investments received its portion of the fees, it too shut down.

32.   On November 1, 2011, Olympus selected members for an independent committee assigned to investigate the past acquisitions.

33.   On November 7, 2011, the Company disclosed that money for corporate deals made from 2006 to 2008 had in fact been used to mask heavy losses on investments incurred since the 1990s. The Company stated that Olympus channeled money through several investment funds to "eliminate latent losses." Olympus also acquired three small companies in Japan for a total of $773 million, only to write down most of their value within the same fiscal year. Those companies – Altis, a medical waste recycling company, Humalabo, a facial cream maker, and News Chef, which makes plastic containers – had little in common with Olympus's main line of business of producing cameras and other electronics. Those businesses had not made money before being acquired, according to the credit ratings agency Tokyo Shoko Research. According to the Company's statement, dated November 8, 2011:

[I]t has been discovered that the Company had been engaging in deferring the posting of losses on investment securities, etc. since around the 1990s, and that both the fees paid to advisors and funds used to buy back preferred stock in relation to the Gyrus Group PLC acquisition, as well as the purchase funds for the acquisition of the three domestic new business companies (Altis Co., Ltd, NEWS CHEF, Inc. and Humalabo Co, Ltd.) had been, by means such as going through multiple funds, used in part to resolve unrealized losses on investment securities, etc. by such deferral in the posting of these losses.

34.    At a news conference held in connection with the Company's announcement, Shuichi Takayama stated that: "It is true that there were inappropriate dealings . . . . Our previous statements were in error." He said Olympus was still investigating the case and was still unprepared to reveal the scale of past losses. He also said that Hisashi Mori, an executive vice president, had been fired over his involvement in the cover-up. Hideo Yamada, who is also implicated, has offered his resignation, he said. He reiterated the company's position that Mr. Woodford's departure had to do with his aggressive Western-style management style rather than his inquiries into the acquisitions. *See* Hiroko Tabuchi, "Olympus Hid Investing Losses in Big Merger Payouts," *The New York Times*, Nov. 7, 2011.

35.    The Tokyo Stock Exchange announced that it may move Olympus shares to a watch list for possible delisting. Prime Minister Yoshihiko Noda called the scandal regrettable and Financial Services Minister Shozaburo Jimi, the head of Japan's financial regulator, said the scandal has tainted Japan's image and that his agency is "determined to move quickly." *See* Yuri Kageyama, "Japan Financial Chief Confirms Olympus Probe," Associated Press, Nov. 11, 2011. The SEC and FBI are also investigating the Company and its activities.

36.    As a result of these revelations, the value of Olympus stock has declined sharply. In early October, the stock had been trading at over $30 per share. On November 8, 2011, following the Company's admitted fraudulent practices, the price of OCPNY stock closed at

$9.05 from the prior day's closing price of $13.72, for a single day loss of $4.67 or over 34%.

By November 10, 2011, the stock had dropped to less than $6 per share.

37.    On or about November 14, 2010, the Company posted the following admission on

its webpage:

> Olympus Corporation would like to announce that the company discovered, in the process of the investigation being carried out by the Third Party Committee with respect to certain previous acquisition transactions, **that it had been engaging in activities such as deferring the posting of losses on investment securities.**
>
> The Company would like to take this opportunity to sincerely offer our deepest apologies to its stakeholders including shareholders, customers, trading partners and other relevant parties for all inconvenience caused **including a fall in share price.**
>
> The Company will, while continuously giving its full support to the Third Party Committee which is carrying out the investigation to establish the truth of the case, exert its utmost effort to increase value as a company that is needed by its employees and society, and to bring reassurance to you as quickly as possible.
>
> The Company shall also promptly disclose any new information which has come to light by announcing it in the timely disclosure network provided by the Tokyo Stock Exchange and on our webpage.
>
> Olympus Corporation would like to ask for your continuous support.
>
> Shuichi Takayama
> Representative Director, President and CEO Olympus Corporation

(*See www.olympus-global.com*)(homepage)

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

38.    At all relevant times, the market for Olympus ADRs was an efficient market for

the following reasons, among others:

a.    Olympus ADRs met the requirements for listing, and were listed and

actively traded in the United States on the OTC, an efficient market;

b.      As a regulated issuer, Olympus issued periodic financial reports;

c.      Olympus stock was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

d.      Olympus regularly issued press releases which were carried by national newswires.  Each of these releases was publicly available and entered the public marketplace.

39.     As a result, the market for Olympus securities promptly digested current information with respect to Olympus from all publicly-available sources and reflected such information in Olympus's stock price.  Under these circumstances, all purchasers of Olympus ADRs during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

40.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. The specific statements pleaded herein were not identified as "forward-looking statements" when made.  Nor was it stated with respect to any of the statements forming the basis of this complaint that actual results "could differ materially from those projected."  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made the

particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Olympus who knew that those statements were false when made.

## SCIENTER ALLEGATIONS

41.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements, issued or disseminated by or in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Olympus and its business practices, their control over and/or receipt of Olympus's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Olympus were active and culpable participants in the fraudulent scheme alleged herein.  Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public.  This case does not involve allegations of false forward-looking statements or projections but instead involves false statements concerning the Company's business, finances and operations.  The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

42.    The Individual Defendants engaged in such a scheme to inflate the price of Olympus ADRs in order to: (i) protect and enhance their executive positions and the substantial compensation and prestige they obtained thereby; and (ii) enhance the value of their personal holdings of Olympus stock.

## LOSS CAUSATION ALLEGATIONS

43.    The defendants' fraudulent statements and omissions artificially inflated Olympus's stock price during the Class Period, until the truth was revealed.  Indeed, when the truth was revealed and the Company admitted that its financial had been intentionally falsified, the value of its stock fell by over 30% in a single day.

## COUNT I

### (Violations of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against Olympus)

44.    Plaintiff repeats and realleges each and every allegation contained above.

45.    The Company: (a) knew or recklessly disregarded material adverse non-public information about Olympus's financial results and then existing business conditions, which was not disclosed; and (b) participated in drafting, reviewing and/or approving the misleading statements, releases, reports and other public representations of and about Olympus.

46.    During the Class Period, the Company, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47.    The Company violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that it (a) employed devices, schemes and artifices to defraud; (b) made untrue

statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon the purchasers of Olympus stock during the Class Period.

48.     Plaintiff and the Class have suffered damage in that, in reliance on the integrity of the market, they paid artificially inflated prices for Olympus stock.  Plaintiff and the Class would not have purchased Olympus stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendant's false and misleading statements.

## COUNT II

### (Violation of Section 20(a) of The Exchange Act Against the Individual Defendants)

49.     Plaintiff repeats and realleges each and every allegation contained above.

50.     The Individual Defendants acted as controlling persons of Olympus within the meaning of Section 20(a) of the Exchange Act.  By reason of their senior executive and/or board positions they had the power and authority to cause Olympus to engage in the wrongful conduct complained of herein.

51.     By reason of such wrongful conduct, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.  As a direct and proximate result of these defendants' wrongful conduct, plaintiffs and the other members of the Class suffered damages in connection with their purchases of Olympus stock during the Class Period.

**WHEREFORE,** plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action and certifying plaintiff as class representatives under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 14th, 2011

**DANIEL B. ALLANOFF**
**MEREDITH COHEN**
**GREENFOGEL & SKIRNICK,**
**P.C.**
1521 Locust Street, 8th Floor
Philadelphia, PA. 19102
Tel: (215) 564-5182
Fax: (215) 569-0958

**SARRAF GENTILE LLP**
Ronen Sarraf
Joseph Gentile
450 Seventh Avenue, Suite 1900
New York, New York 10123
Tel: (212) 868-3610
Fax: (212) 918-7967

**VIANALE &VIANALE LLP**
Kenneth J. Vianale
2499 Glades Road, Suite 112
Boca Raton, FL 33431
Tel: (561) 392-4750
Fax: (561) 392-4775

*Attorneys for Plaintiff*

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, _Lloyd Graham_ , make this declaration pursuant to the federal securities laws.

1.     I have reviewed the complaint in this action (the "Complaint") and authorized its filing on my behalf.

2.     I did not purchase the securities of Olympus Corporation (the "Company") at the direction of my counsel in order to participate in any private action arising under the Securities Act of 1933 or the Securities Exchange Act of 1934.

3.     I am willing to serve as a lead plaintiff either individually or as a group.  A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial, if necessary.

4.     During the three year period preceding the date of my signing this Certification, I have not served nor sought to serve as a representative party on behalf of a class, except (if any):

5.     My transactions in Company stock are as follows:

| Trade Date | Number of Shares | Price Per Share | Buy or Sell |
|---|---|---|---|
| 10/27/2011 | 55 | 17.80 | Buy |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Please attach additional pages if necessary.

6.     I will not accept any payment for serving as a representative party on behalf of the class beyond the pro rata share of any possible recovery, plus reasonable costs and expenses (including lost wages) directly relating to the representation of the class, as approved by the Court.

I declare under penalty of perjury this _10_ day of _November_ 2011, that the foregoing is true and correct.

_____
Signature